UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| ANDREW WYCZLINSKI, | : | Case No. 3:09-cv-481 |
| Plaintiff, | : | Judge Timothy S. Black |
| vs. | : | |
| MICHAEL J. ASTRUE,<br>Commissioner of the Social<br>Security Administration, | : | |
| Defendant. | : | |

## DECISION AND ENTRY: (1) THE ALJ'S NON-DISABILITY FINDING IS NOT SUPPORTED BY SUBSTANTIAL EVIDENCE, AND IT IS REVERSED; (2) THIS MATTER IS REMANDED TO THE ADMINISTRATIVE LAW JUDGE UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g); AND (3) THIS CASE IS CLOSED

This is a Social Security disability benefits appeal. At issue is whether the administrative law judge ("ALJ") erred in finding Plaintiff "not disabled" and therefore not entitled to a period of disability, disability insurance benefits ("DIB"), or supplemental security income ("SSI"). (*See* Administrative Transcript ("Tr.") (Tr. 28).

I.

On January 5, 2005, Plaintiff filed applications for DIB and SSI, alleging he became disabled on December 4, 2004, due to residuals from a gunshot wound and problems with his right arm and left leg. (Tr. 19). Upon the denial of his claims at the state agency levels, Plaintiff requested a hearing *de novo* before an ALJ. (Tr. 39). ALJ Melvin A. Padilla presided over Plaintiff's hearing on July 24, 2008. (Tr. 17, 418).

Plaintiff, represented by counsel, Stephanie Dobson, and a vocational expert, Suman Srinivasan, were present and testified. (Tr. 418-46).

On September 4, 2008, the ALJ entered his decision finding Plaintiff not disabled because he had the residual functional capacity ("RFC") to perform a reduced range of light exertional work for which there were a significant number of jobs. (Tr. 28). Plaintiff appealed the ALJ's denial to the Appeals Council. (Tr. 13). On October 5, 2009, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner. (Tr. 6-8). Subsequently, Plaintiff commenced this action in federal court under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision.

At the alleged onset of Plaintiff's disability, Plaintiff was a 19 year old male with a high school education whose past relevant work experience was as restaurant host and gas station attendant. (Tr. 19).

The ALJ's "Findings of Fact and Conclusions of Law," which contain the rationale of his decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through March 31, 2006.

2. The claimant has not engaged in substantial gainful activity since December 4, 2004, the alleged onset date (20 CFR 404.1520(b), 404.1571, *et seq*, 416.920(b), and 416.971, *et seq*).

3. The claimant has the following "severe" impairment: residuals of gunshot wound to the anterior chin and neck with healed C5 fracture (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he cannot use his right arm and cannot operate foot controls with the right leg; can sit two hours at a time for a total of six hours, stand thirty minutes at a time for a total of two hours, and walk twenty minutes at a time for a total of one hour, during an 8-hour workday; cannot climb ladders, ropes, scaffolds, stairs, or ramps, work at unprotected heights, balance, or crawl; can occasionally kneel, stoop, and crouch; cannot operate moving machinery or drive as part of his job duties; should work in a temperature-controlled environment with no temperature extremes; should not work on rough or uneven surfaces; and can only occasionally use vibratory tools.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on February 6, 1985 and was nineteen years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. In view of the claimant's vocational profile and residual functional capacity, transferability of job skills is not material to the determination of disability (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering his age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c), 404.1566, 416.960(c), 416.966).

11. The claimant has not been under a disability, as defined in the Social Security Act, from December 4, 2004 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17-28).

On appeal, Plaintiff puts forth the following assignments of error: (1) the ALJ erred in finding that there are a significant number of jobs available to Plaintiff, because the vocational expert's testimony does not amount to substantial evidence supporting the finding; and (2) the ALJ erred in finding that Plaintiff's impairment did not meet Listing 11.08.

## II.

The Court's inquiry on appeal is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). In performing this review, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found plaintiff disabled. As the Sixth Circuit has explained:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The claimant bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. § 404.1512(a). That is, he must present sufficient evidence to show that, during the relevant time period, he suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

A.

Taking Plaintiff's second assignment of error first, Plaintiff argues that the ALJ erred at Step 3 of the sequential evaluation when he found Plaintiff's impairment did not meet or equal Listing 11.08. Listing 11.08 addresses spinal cord or nerve root lesions. It requires "disorganization of motor function as described in 11.04B." 20 CFR § 404, Subpart P, Part 4, Appendix 1, at § 11.08. Listing 11.04B defines this as: "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross dexterous movements, or gait and station." 20 CFR § 404, Subpart P, Part 4, Appendix 1, at § 11.04B.

The ALJ determined that Plaintiff did not meet this requirement. While conceding that the impairment in Plaintiff's right arm satisfies the definition, the ALJ reasoned that,

> his right lower extremity function is shown to be significantly improved with ongoing physical therapy and the use of an AFO brace. He testified that he has a prescription for a new brace. Further, physical examination by Dr. Ray revealed only mild spasticity in the right upper and lower extremities (Exhibit 24F). Accordingly, while he does exhibit some impairment of the right upper and lower extremities, the severity of that impairment does not rise to the level of

-5-

> significant and persistent disorganization of function in two lower or upper extremities resulting in sustained disturbance of gait and station or gross and dexterous movement.

(Tr. 23). The ALJ also noted that the State Agency consulting physicians found that Plaintiff's impairments were not sufficiently severe to meet any Listing Impairment. (*Id.*).

The ALJ's finding at Step 3 is supported by substantial evidence. Plaintiff's physical therapy records show that his right leg injury was improving significantly. (Tr. 341-348). One year after the injury, Plaintiff was driving without difficulty and was not wearing his AFO brace. (Tr. 252). Some two years later, Plaintiff was able to walk up steps without issue. (Tr. 282). Several doctors opined on Plaintiff's ability to stand and/or walk between 20 to 30 minutes at a time and one to two hours overall. (Tr. 280, 377). This, and other evidence cited in the ALJ's decision, amounts to substantial evidence supporting the ALJ's finding that Plaintiff's right leg impairments were not so severe as to meet the requirements under Listing 11.08.

Plaintiff launches several attacks on the ALJ's Step 3 finding but makes no mortal wounds. Though the consultative examination by Dr. Ray did reveal more than the mere mild spasticity cited by the ALJ, none of his other findings noted by Plaintiff contradict the ALJ's finding regarding the severity of his impairment. While Plaintiff points out that the ALJ found several limitations regarding Plaintiff's right leg, such criticism does not undermine the ALJ's finding regarding severity. The ALJ's decision on this issue is supported by substantial evidence, and it is affirmed.

**B.**

In his other assignment of error, Plaintiff argues that the ALJ erred in finding that there are a significant number of jobs available to Plaintiff, because the vocational expert's testimony does not amount to substantial evidence supporting the finding. The Court agrees.

A significant part of the ALJ's RFC formulation was that Plaintiff "cannot use his right arm." (Tr. 23). In determining the number of jobs available to Plaintiff, the ALJ accepted the opinion of the independent vocational expert who testified at the hearing. As the ALJ stated in his decision:

> The vocational expert testified that given all of these factors the individual would be able to perform the requirements of at least 2,000 representative unskilled jobs at the light exertional level in the regional economy, such as ticket taker and information clerk. The ability to do light work includes the ability to do sedentary work (section 202.00(a) of Appendix 1, Subpart P, Regulations No. 4). The vocational expert identified an additional 450 jobs at the sedentary exertional level, such as surveillance systems monitor which the above-described hypothetical person could also perform.

(Tr. 27). Plaintiff argues, however, that the ALJ misrepresents the vocational expert's testimony.

Plaintiff argues that in response to questioning from Plaintiff's counsel, the vocational expert clarified her assessment of the number of jobs available to Plaintiff, ultimately rending a much different opinion than that cited and relied upon by the ALJ. The Court agrees.

At the hearing, the ALJ asked the vocational expert to identify the type and number of jobs available in the regional economy that a person with Plaintiff's RFC could perform. (Tr. 437-8). The vocational expert replied, "[y]our Honor, I do believe, based on my knowledge and observation of jobs, that there would be around 2,000 jobs at the light, unskilled level. With the hypothetical you've given me, examples would be a ticket taker and information clerk." (Tr. 438). She continued, "[n]ow at the sedentary, unskilled level, sir, I would say one could certainly be a surveillance system monitor. There are about 400 of those in the regional economy." (*Id.*). The ALJ asked the vocational expert how many total sedentary jobs were relevant, she replied, "[p]robably no more than 450, sir, at the most." (*Id.*).

Plaintiff's counsel then asked the vocational expert questions regarding the requirements of a ticket taker, specifically whether the job required the use of both hands. The vocational expert gave a somewhat meandering response, but ultimately opined that a ticket taker at a movie theater would be able to perform his duties with only the use of one hand. (Tr. 440). In support, the expert stated:

> I even checked with the local parking lot attendant. I didn't give that as an example today because the Judge said no outside environments [in his RFC hypothetical] but I asked him would you be able to do the job with one arm if it wasn't your dominant arm? And he said at hospitals, for example, one could really take the money with one hand, push it in order to find out, you know, the exact amount so, yes, it could be done with the use of one arm. So granted it's the sample of one but they are jobs and I have observed them.

-8-

(Tr. 440-1). The vocational expert continued, "[s]o my answer to that would be use of the other arm as an assist would certainly make the job easier, the use of two arms would make it, you know, make the job go faster. But the question here is can it be done with one arm? And it appears to me . . . based on my observation that, yes, it can be done." (Tr. 441).

Plaintiff's attorney then asked, "[c]an [the job of a ticket taker] be done at a reasonable pace with one arm?" (*Id.*). The vocational expert replied, "[a]gain, the question for me vocationally would be the question of accommodation. If it was something that a person . . . has learned to accommodate over three or four years . . . one would certainly get used to it using just one arm." (*Id.*). Plaintiff's attorney pressed her, asking whether a ticket taker with use of only one arm would be slower than one with the use of two, to which the expert responded affirmatively. (*Id.*). Plaintiff's counsel continued, "[s]o would you also agree that the employer would need to make accommodations for the one-armed worker." (*Id*). The vocational expert answered affirmatively. (Tr. 442).

In addition to questioning whether the vocational expert's opinion properly accounted for the Plaintiff's inability to use one arm, Plaintiff also asserts that the vocational expert did not properly account for Plaintiff's sitting and standing limitations in opining on the number of jobs Plaintiff is capable of performing. Plaintiff's counsel asked the vocational expert how long ticket takers have to stand in an eight hour workday. The vocational expert responded that it "tends to vary with where you're at. I have seen

ticket takers stand, I have seen ticket takers with a sit/stand stool." (Tr. 442). She continued, "there are around 580 ticket taker positions. So even if we say that half of these have the ability to sit and stand as needed, we're looking at about 200 of these." (Tr. 443). Additionally, Plaintiff's attorney asked the vocational expert how many of the 2,000 light exertional jobs she testified Plaintiff could perform had a sit/stand option. (Tr. 444-5). The vocational expert responded, "I really don't have a way to estimate. I responded today based on my observation, but, yes, potentially there would be industries where a person might be required to stand more than they [would] be required, you know, to sit." (Tr. 445). She concluded, "[s]o, given that, it would be reasonable to assume that they might be -- there would be a reduction in numbers," however, she could not give an exact number. (*Id.*).

Ultimately, the vocational expert's opinions were unenlightening and inconsistent. While the vocational expert initially stated that Plaintiff could perform some 2,000 light and 450 sedentary jobs in the region – the opinion the ALJ specifically cited as the basis for his decision that a sufficient number of jobs exist that Plaintiff can perform – the vocational expert, under Plaintiff's counsel's questioning, was in fact unable to give a lucid opinion.

Moreover, that the vocational expert had to adjust her opinion based on Plaintiff's attorney's questions exposes her opinion as inconsistent in the first instance. The hypothetical RFC presented to the vocational expert by the ALJ included the limitations, "no use of the right upper extremity," and "sit two hours . . . at a time six hours a day,

-10-

stand 30 minutes at a time two hours a day." (Tr. 438). If the vocational expert's opinion was that a person with those limitations could perform some 2,450 jobs in the regional economy, it is unclear why Plaintiff's counsel's further questioning, which did not add any limitations to the RFC, would change those numbers.

Plaintiff has the burden of proof to show that disability prevents him from performing any substantial gainful employment for the statutory period. However, once Plaintiff makes a *prima facie* case that he cannot perform his past relevant work, the burden shifts to the Commissioner to show that there is sufficient work in the national economy that Plaintiff is able to perform. *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The ALJ conceded that Plaintiff was unable to perform his past relevant work. (Tr. 26). Therefore, the burden shifted to the Commissioner. However, by relying on the vocational expert's flawed opinion, the Commissioner has failed to meet this burden. In short, the ALJ's decision is not supported by substantial evidence.

Defendant attempts to minimize these issues. First, Defendant maintains that Plaintiff's arguments do not impugn the 450 sedentary unskilled jobs cited by the vocational expert. By themselves, Defendant argues, these sedentary jobs amount to a significant number of jobs which Plaintiff can perform and therefore are sufficient to sustain the ALJ's decision. Defendant then cites several cases holding various numbers of jobs - 174, 870, 1,350, 500 - to be significant. *Defendant's Memorandum in Opposition* at 18.

But this misses key implications of Plaintiff's assignment of error. Whether or not 450 jobs would meet the significant number requirement in this case is not determinative, as the vocational expert's testimony is so flawed that it is of little or no value. One of the criteria to be used to determine whether a certain number of jobs meets the significant number requirement is "the reliability of the vocational expert's testimony." *Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988). Moreover, the ALJ based his decision not on Plaintiff being able to perform 450 jobs, but on 2,450 jobs, a patently inflated and incorrect number. Therefore, even if the vocational expert's citation to 450 sedentary jobs would suffice, the ALJ did not rest his decision on that number.

Defendant next argues that Plaintiff misunderstands the vocational expert's testimony. In the face of Plaintiff's attorney's questioning, Defendant maintains that the vocational expert never wavered from her original testimony that a person with one arm could perform the job of ticket taker, even citing research and examples from her personal experience. *Defendant's Memorandum in Opposition* at 18-9. However, the vocational expert's testimony is hardly clear. Indeed, in response to Plaintiff's counsel's question, "[s]o would you also agree that the employer would need to make accommodations for the one-armed worker?" the vocational expert agreed, "[y]es, absolutely one would certainly need to do that." (Tr. 441-2).

Furthermore, the record belies Defendant's assertion that the vocational expert consistently testified that a one-armed person could perform the job of a ticket taker. The vocational expert, in a rather tangled portion of her testimony, stated that the job of an

information clerk may be done by a one-armed person at a slower pace, but "could be done with[in] the parameters that have been given this morning." When Plaintiff's counsel asked if the one-armed employee would need a "very accommodating boss," the vocational expert replied, "[n]ot for that job as much as you'd probably need one for the ticket taker." (Tr. 442). Thus, the vocational expert's testimony is at best ambiguous as to whether someone with the use of only one arm could perform the job of ticket taker (or even information clerk) without receiving accommodations.

Moreover, the research and examples the vocational expert cites from her experience are unpersuasive. The example the expert cites is that she asked the local parking attendant before the hearing whether he could do his job with just one arm. (Tr. 440). He answered yes. The vocational expert admitted "it's the sample of one." (Tr. 441). A simple recounting of the opinion of the local parking attendant is not convincing expert testimony, even if related by the vocational expert. Moreover, the research cited by the vocational expert was "a study that had been presented at the American Board of Vocational Experts in Las Vegas last year." (Tr. 439-40). The expert stated:

> I have that study in front of me and they did ask questions about whether these jobs could be done with the use of one arm only. So they surveyed 25 different jobs in as many different settings and, you know, some of the jobs that I did not identify today they said greeters can be done, cashiers in very select environments like a movie theater or – movie theater, security guards in grocery stores and movie theaters. All of these jobs the employers and the employees indicated could be done with the use of one arm.

(Tr. 440).

-13-

This would appear to be strong evidence, despite the short explanation by the expert. Yet, as recounted previously, the vocational expert immediately retreated from this position. For instance, rather than asserting that a one-armed person could work as a ticket taker, she stated that a one-armed ticket taker would have to have an accommodating employer. (Tr. 441-2).

Finally, Defendant argues that Plaintiff's questioning of the vocational expert regarding a sit/stand option is misplaced and irrelevant, since the ALJ did not include a sit/stand at-will limitation in his RFC. Even so, Defendant asserts, the expert still identified some 200-300 light, unskilled ticket taker jobs in the regional economy that would allow a sit/stand option. Combined with the 450 sedentary jobs, the argument goes, the vocational expert identified at least 650 jobs that Plaintiff does not specifically attack. *Defendant's Memorandum in Opposition* at 19.

Though Plaintiff's RFC did not include a sit/stand at-will limitation, the ALJ did note the relevant restrictions, "can sit two hours at a time for a total of six hours, stand thirty minutes at a time for a total of two hours." (Tr. 23). Therefore, any job that Plaintiff can perform must allow some sit/stand option. When Plaintiff's counsel questioned the vocational expert on how long a ticket taker stands during an eight-hour workday, she replied, "[y]ou know, that tends to vary with where you're at. I have seen ticket takers stand, I have seen ticket takers with a sit/stand stool." (Tr. 442). The basis for her statement was "my observation of some of these jobs." (Tr. 443). When Plaintiff's attorney sought clarification about how many of the ticket taker jobs would

require the employee to stand the entire workday, the vocational expert responded, "it would be a question of whether . . . a stool is available to them or not." She continued, "there are around 580 ticket taker positions. So even if we say that half of these have the ability to sit and stand as needed, we're looking at about 200 of these." (*Id.*).

The vocational expert's testimony reveals the unreliability of her opinion. The RFC on which the vocational expert opined included a sit/stand restriction, yet when pressed, she decreased the number of jobs - seemingly on a guess - because of this very restriction.

Furthermore, though Plaintiff does not specifically attack either the 200-300 ticket taker jobs that the vocational expert opined would not require constant standing or the 450 sedentary jobs, again, the ALJ did not rely on Plaintiff being able to work some 650 jobs, rather he predicated his decision on the vocational expert's citation to 2,450 jobs. Additionally, the inconsistencies and unreliability of the vocational expert's testimony cast doubt on her entire opinion.

In summary, Defendant did not satisfy its burden of demonstrating that work exists in significant numbers that Plaintiff can perform. The ALJ relied entirely on the vocational expert's testimony in determining that there exist 2,450 such jobs. However, upon careful examination, the vocational expert's opinion is unreliable. Therefore, the ALJ's decision is not supported by substantial evidence.

## III.

The fourth sentence of 42 U.S.C. § 405(g) authorizes the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." A sentence four remand empowers the district court to "order the [Commissioner] to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the [Commissioner's] misapplication of the regulations in the first place." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 175 (6th Cir. 1994).

The Sixth Circuit has ordered a sentence four remand when an ALJ relied upon a vocational expert's opinion that was subsequently called into doubt. *Gower v. Apfel*, 11 Fed. Appx. 447, 453 (6th Cir. 2001). Likewise, a sentence four remand is appropriate in this case to permit the ALJ to properly determine, with suitable basis, that there is a significant number of jobs in the national economy that Plaintiff can perform.

## IV.

For the foregoing reasons, Plaintiff's second assignment of error is well taken. The ALJ's decision is not supported by substantial evidence, and it is reversed. This case is remanded under sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner shall obtain a reliable expert opinion regarding the number of jobs in the economy that Plaintiff is able to perform, and shall determine whether or not that amount constitutes a significant number within the meaning of the regulations.

**IT IS SO ORDERED.**

Date: 3/1/11

*Timothy S. Black*
Timothy S. Black
United States District Judge